BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

LOLITA DE PALMA (WABN 57380)
Trial Attorney
Tax Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 305-3664
Fax: (202) 307-0054
Email: Lolita.DePalma@usdoj.gov
        Western.Taxcivil@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KWAN YOON, GOODAM HOLDINGS LLC, and HYUNDAM LLC<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondents. | Case No. 3:26-cv-01423-VC<br><br>**UNITED STATES' MOTION FOR SUMMARY DENIAL OF THE PETITION TO QUASH AND FOR ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONSES**<br><br>Hearing Date: July 9, 2026<br>Hearing Time: 10:00 AM<br>Judge: District Judge Vince Chhabria |

NOTICE IS GIVEN that on July 9, 2026, at 10:00 AM or as soon as counsel may be heard by the Court, the United States will and hereby requests that the Court summarily deny Petitioners Kwan Yoon, Goodam Holdings LLC, and Hyunam LLC's Petition to Quash Summonses (Dkt. 1) and issue an order enforcing the IRS summonses served on Wells Fargo Bank, N.A., and First Citizens Bank pursuant to the United States–Republic of Korea Income Tax Convention (the "U.S.-South Korea Tax Treaty").

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................... ii

Table of Authorities ......................................................................................................... iii

Introduction ....................................................................................................................... 1

Background ........................................................................................................................ 1

Discussion .......................................................................................................................... 4

   I.    The United States Has Established a Prima Facie Case for Enforcement Under *Powell*... 6

      A.   Prong One: The Summonses Were Issued for a Legitimate Purpose. ........................... 6

      B.   Prong Two: The Material Being Sought Is Relevant to that Purpose. ........................... 6

      C.   Prong Three: The Information Sought Is Not Already in the IRS's Possession. ............ 7

      D.   Prong Four: The IRS Complied with the Administrative Steps Required by the Internal Revenue Code. .............................................................................................................. 7

   II.    Petitioners Cannot Rebut the Prima Facie Case for Enforcement. ..................................... 8

      A.   Prong One: A South Korean Dispute over Yoon's Residency Does Not Bear on the IRS's Good Faith. ......................................................................................................... 8

      B.   Prong Two: Petitioners Cannot Show that the Requested Records Are Not Relevant to the IRS's Legitimate Purpose. ...................................................................................... 10

      C.   Prong Three: Petitioners Cannot Rebut That the Information Sought Is Not in the IRS's Possession. .................................................................................................................... 10

      D.   Prong Four: Because Notice of Third-Party Contacts Is Not Required for Summonses Issued in Response to Treaty Requests, the IRS Complied with All Necessary Administrative Prerequisites. .......................................................................................... 11

         i.    Even if the summonses could affect Yoon's U.S. taxes, § 7602(c)(1) advance notice does not apply. ................................................................................................... 11

         ii.   The best interpretation of § 7602(c)(1) is that it does not apply to foreign tax liabilities. ................................................................................................................... 12

         iii.   Alternatively, the Regulation is a proper exercise of the IRS's delegated authority under § 7805. ............................................................................................... 14

Conclusion ....................................................................................................................... 14

Certificate of Service ...................................................................................................... 16

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

ii

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. United States*,
 2025 WL 2780786 (N.D. Cal. Sept. 30, 2025) .................................................................10, 11

*Caruso v. United States*,
 2025 WL 2482235, (N.D. Cal. Aug. 28, 2025) .........................................................................7

*Crystal v. United States*,
 172 F.3d 1141 (9th Cir. 1999) .............................................................................................5, 8

*G2A.COM Sp. z.o.o. (Ltd.) v. United States*,
 789 F. App'x 296 (3d Cir. Oct. 15, 2019).............................................................................5, 12

*Gomis Rabassa v. United States*,
 2024 WL 1435103 (11th Cir. Apr. 3, 2024) ...............................................................................9

*Gundy v. United States*,
 588 U.S. 128 (2019).................................................................................................................12

*Lesko v. United States*,
 161 F.4th 1352 (Fed. Cir. 2025) (en banc) ...............................................................................14

*Liberty Fin. Servs. v. United States*,
 778 F.2d 1390 (9th Cir. 1985) ......................................................................................5, 6, 8, 9

*Lidas v. United States*,
 238 F.3d 1076 (9th Cir. 2001) .............................................................................................4, 5

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024)...............................................................................................11, 12, 13, 14

*Mayo Found. for Med. Educ. v. United States*,
 562 U.S. 44 (2011)...................................................................................................................14

*Mazurek v. United States*,
 271 F.3d 226 (5th Cir. 2001) .....................................................................................................9

*McNamee v. Dep't of Treasury*,
 488 F.3d 100 (2d Cir. 2007)......................................................................................................14

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944).............................................................................................................12, 13

*Stewart v. United States*,
 511 F.3d 1251 (9th Cir. 2008) ...............................................................................................4, 5

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

iii

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

*United States v. Arthur Young & Co.*,
    465 U.S. 805 (1984)..................................................................................................7

*United States v. Powell*,
    379 U.S. 48 (1967).......................................................4, 5, 6, 7, 8, 9, 10, 14

*United States v. Stuart*,
    489 U.S. 353 (1989).............................................................4, 5, 9, 12, 13

*United States v. Tan*,
    16 F.4th 1346 (9th Cir. 2021) ...............................................................6

*Vistadis, LLC v. United States*,
    2019 WL 1430111 (E.D. Pa. Mar. 29, 2019)......................................8, 9

*Zhang v. United States*,
    2021 WL 6122922 (N.D. Cal. Oct. 28, 2021)......................................6, 10

*Zhang v. United States*,
    2022 WL 14010799 (9th Cir. Oct. 24, 2022).............................................8

**Statutes, Regulations, and Rules**

26 C.F.R. § 301.7602-2................................................................5, 11, 13, 14

26 U.S.C. § 7602...............................................................4, 5, 8, 11, 12, 13, 14

26 U.S.C. § 7603.....................................................................................7

26 U.S.C. § 7609..................................................................................4, 7

26 U.S.C. § 7805...................................................................................14

**Other Authorities**

United States–Republic of Korea Income Tax Convention, 1979-2 C.B. 435 (IRS
    FIA), 1979 WL 6853 (Oct. 20, 1979).......................................1, 4, 6, 9

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

**INTRODUCTION**

At the request of South Korea, the IRS has issued summonses to Wells Fargo and First Citizens Bank for information on Kwan Yoon and BRV Korea. Kwan Yoon and two of his associated entities have now petitioned this Court to quash these summonses. They argue that the summonses are improper because (1) Yoon's South Korean residency is the subject of pending litigation and (2) the IRS failed to provide 45-day advance notice of the summonses. But foreign litigation over Yoon's South Korean residency does not affect the validity of the summonses. And the IRS is not required to provide advance notice of summonses with respect to foreign tax liabilities. The Court should thus deny the petition to quash and enforce the summonses.

**BACKGROUND**

The U.S.-South Korea Tax Treaty facilitates the exchange of tax information between the United States and South Korea. 1979-2 C.B. 435 (IRS FIA), Art. 28, 1979 WL 6853, at *18−19 (Oct. 20, 1979). If South Korea requests a record pertinent to tax collection, the United States must provide that record if it can obtain it under its own laws and administrative practices. *Id.*, Art. 28, at *18−19, *61. And South Korea must do the same at the United States' request. *Id.*

The Korean National Tax Service ("NTS") has opened a civil examination into Kwan Yoon's and BRV Korea Advisor Co. Ltd.'s ("BRV Korea's") South Korean income taxes. Thomas Decl. ¶6; Johnson Decl. ¶3. They are investigating Yoon's individual income taxes for 2021 through 2023 and BRV Korea' s corporate income taxes for 2020 through 2024. Thomas Decl. ¶7. The NTS suspects Yoon of concealing income received from BRV Korea. *Id.* ¶8. If Yoon and BRV Korea have not complied with their income tax reporting obligations under South Korean law, they could both be liable for South Korean tax on this income. *Id.* American bank records of accounts associated with Yoon or BRV Korea could assist the NTS in determining whether Yoon has concealed income from BRV Korea. *Id.* ¶16.

South Korea has requested that the IRS obtain bank records from Wells Fargo and First Citizens Bank for accounts owned, controlled, or under the signatory authority of either Kwan Yoon or BRV Korea. Thomas Decl. ¶9−10. South Korea wants the transactional history and

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

1

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

ownership information for these Wells Fargo and First Citizen Bank accounts. *Id.* According to South Korea's request, the NTS would be able to obtain this information under South Korean law if these bank records were in South Korea. *Id.* ¶11. This information may assist NTS in determining to what degree Yoon and BRV Korea are connected. And whether Yoon has been receiving income that is traceable to BRV Korea.

The request for information lists account numbers of bank accounts associated with Yoon and BRV Korea. Thomas Decl. ¶10. The request notes that these accounts are held in the name of Kwan Yoon, Goodam Holdings LLC, Hyundam LLC, BRV Lotus Partners 2012 LP, BRV Lotus Growth Partners 2015 LP, or BRV Lotus Fund 111 LP. *Id.*

After reviewing South Korea's request, the IRS determined that the request was proper under the U.S.-South Korea Tax Treaty and that the United States should honor the request. Thomas Decl. ¶18. As the IRS did not have the information requested by South Korea in its possession, Tax Law Specialist Shelby Johnson issued IRS summonses on Wells Fargo and First Citizens Bank to obtain this information. Johnson Decl. ¶4, Exs. A−B. Johnson issued four summonses: (1) a summons on Wells Fargo for records relating to accounts owned, controlled, or under the signatory authority of BRV Korea from January 1, 2020 through December 31; 2024; (2) a summons on First Citizens Bank for records relating to accounts owned, controlled, or under the signatory authority of BRV Korea from January 1, 2020 through December 31, 2024; (3) a summons on Wells Fargo for records relating to accounts owned, controlled, or under the signatory authority of Kwan Yoon from January 1, 2021 through December 31, 2023; and (4) a summons on First Citizens Bank for records relating to accounts owned, controlled, or under the signatory authority of Kwan Yoon from January 1, 2021 through December 31, 2023. *Id.* The two summonses Johnson issued to Wells Fargo list possible account numbers for accounts held in the names of Kwan Yoon, Goodam Holdings, and Hyundam LLC. Johnson Decl. ¶4, Ex. A at 5, Ex. B at 5. Because Goodam Holdings LLC and Hyundam LLC are both Nevada limited liability companies owned solely by Yoon, accounts held in the name of Goodam Holdings and Hyundam LLC are likely controlled by or under the signatory authority of Yoon. Dkt. 1 ¶¶2−3.

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

The two summonses Johnson issued to First Citizens Bank—formerly Silicon Valley Bank—list possible Silicon Valley Bank account numbers for Kwan Yoon, BRV Lotus Partners 2012, BRV Lotus Growth, and BRV Lotus Fund III, LP. Johnson Decl. ¶4, Ex. A at 11, Ex. B. at 11.

All four summonses request these records of the ownership and transactional history of accounts associated with Yoon and BRV Korea: (1) account opening documents, (2) account signature cards, (3) customer due diligence records, (4) monthly account statements, (5) deposit and withdrawal documents, (6) correspondence, and (7) memorandum files. Johnson Decl. ¶4, Ex. A at 5, 11; Ex. B at 5, 11. For accounts in Yoon's possession, custody, or control, the summons limits its request for monthly account statements, deposit and withdrawal documents, correspondence, and memorandum files to 2021 through 2023. Johnson Decl. ¶4, Ex. B at 5, 11. For accounts in BRV Korea's possession, custody, or control, the time period is limited to 2020 through 2024. Johnson Decl. ¶4, Ex. A at 5, 11.

On January 30, 2026, Johnson served the summonses on Wells Fargo and First Citizens Bank via certified mail. Johnson Decl. ¶5, Exs. C−D. That same day Johnson sent notices of the summonses to Kwan Yoon, BRV Korea, Hyundam LLC, Goodam Holdings, BRV Lotus Partners 2012, and BRV Lotus Fund III, LP. Johnson Decl. ¶¶6−8, Exs. E−L. Because there was no address available for BRV Lotus Growth Partners 2015 LP, Johnson left notice with First Citizens Bank with instructions for them to forward it to BRV Lotus Growth Partners 2015 LP. Johnson Decl. ¶¶6−7, Ex. G at 5, Ex. H at 5, Ex. K at 6, Ex. L at 6. The IRS was not in possession of the requested information at the time the summonses were issued. Johnson Decl. ¶10. And there is no Justice Department referral for Kwan Yoon or BRV Korea. Johnson Decl. ¶15.

On February 18, 2026, Kwan Yoon, Goodam Holdings LLC, and Hyundam LLC petitioned to quash the IRS summonses to the extent they seek records of accounts, owned, controlled, or under Petitioners' signatory authority. Dkt. 1. Petitioners do not seek to quash the summonses to the extent that they seek records of accounts held by BRV Lotus Partners 2012 LP, BRV Lotus Growth Partners 2015 LP, or BRV Lotus Fund III, LP. Dkt. 1 ¶¶20−21, n. 1−2.

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

3

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

## DISCUSSION

The U.S.-South Korea Tax Treaty is "part of the law of the United States." *Lidas v. United States*, 238 F.3d 1076, 1081 (9th Cir. 2001). This treaty requires the United States, at South Korea's request, to use its laws and administrative practices to secure information relevant to a South Korean tax examination. 1979-2 C.B. 435, Art. 28, 1979 WL 6853, at *18−19. If South Korea requests information within the bounds of the treaty, the IRS must use its administrative tools to secure it. *Lidas*, 238 F.3d at 1081. One such tool is the administrative summons. Under 26 U.S.C. § 7602(a), the IRS has broad power to summons any person who has records relevant to determining a tax liability and require him to produce those records. *See Stewart v. United States*, 511 F.3d 1251, 1254 (9th Cir. 2008). At South Korea's request, the IRS can use the summons power to secure information relevant to determining South Korean tax liabilities. *See United States v. Stuart*, 489 U.S. 353, 356, 370 (1989).

Petitioners seek to quash four summonses issued by the IRS in response to a request by South Korea under the U.S.-South Korea Tax Treaty. In response to a petition to quash, the United States may both defend the validity of the summonses and "seek to compel compliance." 26 U.S.C. § 7609(b)(2)(A). The United States "need not meet any standard of probable cause to obtain enforcement." *United States v. Powell*, 379 U.S. 48, 57 (1967). The United States need only show that each "summons was issued in good faith." *Stewart*, 511 F.3d at 1254.

The IRS has issued a summons in good faith if: "(1) the investigation will be conducted for a legitimate purpose; (2) the inquiry will be relevant to such purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed." *Lidas*, 238 F.3d at 1082. This is the *Powell* test. 379 U.S. at 57−58. The United States' "burden under *Powell* is a slight one and typically is satisfied by the introduction of a sworn declaration of the [IRS employee] who issued the summons that the *Powell* requirements have been met." *Stewart*, 511 F.3d at 1254. The "showing need only be minimal . . . because the statute must be read broadly to ensure that the

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

enforcement powers of the IRS are not unduly restricted." *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985).

Once the *Powell* test is satisfied, there is a prima facie case for summons enforcement. *Stewart*, 511 F.3d at 1255. The "heavy" burden then falls on those opposing the summons to "show an abuse of process or the lack of institutional good faith." *Id.* Indeed, they "must allege specific facts and evidence to support [any] allegations[] of bad faith or improper purpose." *Crystal v. United States*, 172 F.3d 1141, 1144 (9th Cir. 1999). If they cannot rebut the prima facie case, then the summons must be enforced. *Stuart*, 489 U.S. at 360. The same framework applies when the IRS issues a summons in response to a treaty request. *Lidas*, 238 F.3d at 1081−82. "So long as the IRS itself acts in good faith" under the *Powell* test "and complies with applicable statutes, it is entitled to enforcement of its summons." *Stuart*, 489 U.S. at 370.

IRS Program Manager Patricia Thomas and Tax Specialist Shelby Johnson have provided sworn declarations that the summonses Petitioners seek to quash were issued in response to a proper U.S.-South Korea Tax Treaty request. Thomas Decl. ¶18; Johnson Decl. ¶¶2−4. The summonses seek information relevant to fulfilling that request that is not already in the IRS's or the NTS's possession. Thomas Decl. ¶¶6−16; Johnson Decl. ¶¶2−11, Exs. A−B. And the IRS has complied with all the requisite administrative steps for the enforcement of the summonses. Johnson Decl. ¶12. Contrary to Petitioners' arguments, Yoon was not entitled to 45-day advance notice of the summonses under 26 U.S.C. § 7602(c)(1) because that notice requirement applies only to summonses related to the determination or collection of U.S. tax liabilities—not foreign tax liabilities. The plain language of the statute, interpreted with due respect to its regulations, compels this interpretation. 26 C.F.R. § 301.7602-2(c)(3)(i)(C); *see G2A.COM Sp. z.o.o. (Ltd.) v. United States*, 789 F. App'x 296, 301 (3d Cir. Oct. 15, 2019). Because the summonses satisfy the *Powell* test, the Court should summarily deny the petition to quash the summonses and instead enforce them.

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

5

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

I.    The United States Has Established a Prima Facie Case for Enforcement Under *Powell*.

"Proceedings to enforce a summons are summary in nature." *United States v. Tan*, 16 F.4th 1346, 1352 (9th Cir. 2021). "Assertions by affidavit of the investigating agent that the [*Powell*] requirements are satisfied are sufficient to make the prima facie case." *Liberty Fin. Servs.*, 778 F.2d at 1392. Two IRS employees have submitted declarations demonstrating that the summonses satisfy the *Powell* test, thereby establishing a prima facie case for enforcement.

A.    *Prong One:* The Summonses Were Issued for a Legitimate Purpose.

Both Thomas and Johnson attest that the summonses were issued in response to a request under the U.S.-South Korea Tax Treaty. Thomas Decl. ¶¶4−14; Johnson Decl. ¶4. This treaty requires the United States to provide documents specifically requested by South Korea to the extent such documents could have been obtained under South Korean law for tax collection purposes. 1979-2 C.B. 435, Art. 28, 1979 WL 6853, at *18−19. South Korea represented that the documents requested would be obtainable under its tax laws if they had been stored in South Korea. Thomas Decl. ¶11. Program Manager Thomas reviewed the request and determined that it was proper under the treaty. Thomas Decl. ¶18. IRS Tax Specialist Johnson then issued the summonses to obtain the information South Korea had requested. Johnson Decl. ¶4. "Complying with a treaty partner's proper request is a legitimate purpose." *Zhang v. United States*, 2021 WL 6122922, at *3 (N.D. Cal. Oct. 28, 2021), *aff'd* 2022 WL 14010799 (9th Cir. Oct. 24, 2022). Thus, the summonses satisfy the first *Powell* requirement.

B.    *Prong Two:* The Material Being Sought Is Relevant to that Purpose.

The IRS issued the summonses to comply with South Korea's treaty request for the ownership and transactional history information for Kwan Yoon's and BRV Korea's Wells Fargo and Silicon Valley Bank accounts. Johnson Decl. ¶4. The summonses seek material relevant to that purpose. The summonses seek account opening documents, signature cards, customer due diligence records, monthly account statements, deposit and withdrawal documents, correspondence, and memorandum files for accounts owned, controlled, or under the signatory authority of Kwan Yoon and BRV Korea. Johnson Decl. ¶4, Ex. A at 5, 11, Ex. B at 5, 11. The

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

6

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

account opening documents, signature cards, customer due diligence records, correspondence and memorandum files are all potentially relevant to the true ownership of the accounts. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (standard is "*potential relevance*"). And the monthly account statements, the deposit slips, and the withdrawal documents establish the transactional history of the accounts.

The summonses are also time limited to the South Korean tax periods at issue. *See* Thomas Decl. ¶7. The summonses for BRV Korea request information for accounts under BRV Korea's control from January 1, 2020 through December 31, 2024. Johnson Decl. ¶4, Ex. A at 5, 11. And the summonses for Yoon are further limited to January 1, 2021 through December 31, 2023. Johnson Decl. ¶4, Ex. B at 5, 11. Thus, the information requested by the summonses is relevant to fulfilling South Korea's treaty request.

And the account ownership and transactional history information requested from accounts associated with Kwan Yoon and BRV Korea is at least potentially relevant to determining whether Kwan Yoon has concealed income from BRV Korea for the years under South Korean audit. *See Caruso v. United States*, 2025 WL 2482235, at *4 (N.D. Cal. Aug. 28, 2025). The second *Powell* requirement is satisfied.

   C.  *Prong Three: The Information Sought Is Not Already in the IRS's Possession.*

The IRS does not have the information requested by the summonses. Johnson Decl. ¶11. The third *Powell* requirement is met.

   D.  *Prong Four: The IRS Complied with the Administrative Steps Required by the Internal Revenue Code.*

In issuing the summonses, Johnson complied with all the requirements of the Internal Revenue Code. Johnson Decl. ¶12. She served the summonses on Wells Fargo and First Citizens Bank via certified mail in accord with 26 U.S.C. § 7603(b). Johnson Decl. ¶5, Exs. C−D. And she complied with § 7609(a)'s notice requirements for third-party summonses by providing notice that same day to Kwan Yoon, Hyundam LLC, Goodam Holdings, LLC, BRV Korea, and

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

the related BRV Korea entities. Johnson Decl. ¶¶6−8, Exs. E−L. No additional notice is required by the Internal Revenue Code. Thus, the fourth and final *Powell* requirement is satisfied.

***

The United States has demonstrated that the IRS summonses pass the *Powell* test, thereby establishing a prima facie case for the enforcement of the summonses. *See Crystal*, 172 F.3d at 1143−44. The burden now falls to Petitioners to demonstrate through specific facts and evidence that the IRS has acted in bad faith. *See Liberty Fin. Servs.*, 778 F.2d at 1392. But they have not carried, nor can they carry, this heavy burden.

II.    Petitioners Cannot Rebut the Prima Facie Case for Enforcement.

Petitioners contend that the summonses do not satisfy any of the *Powell* requirements. Dkt. 1 ¶¶ 32. But their central challenges are to prongs one and four of the *Powell* test. Under prong one, they argue that the summonses were not issued for a legitimate purpose because a South Korean court is currently litigating Yoon's South Korean residency. Dkt. 1 ¶¶ 33−41. But they forget that "[t]he IRS need only establish its good faith, not that of the requesting foreign sovereign." *Zhang*, 2022 WL 14010799, at *1 (9th Cir. Oct. 24, 2022). Under prong four, they contend that the IRS did not comply with § 7602(c) because they did not send notice to Petitioners 45 days in advance of issuing the summonses. Dkt. 1 ¶¶44−49. Yet § 7602(c)(1)'s 45-day-notice requirement does not apply to summonses with respect to foreign tax liabilities. Thus, Petitioners' challenges fail, and the summonses should be enforced.

A.    *Prong One: A South Korean Dispute over Yoon's Residency Does Not Bear on the IRS's Good Faith.*

At the summons enforcement stage, "[t]he relevant question is whether the IRS issued the summons in good faith—not whether [Petitioners are] subject to [South Korean] taxes." *Vistadis, LLC v. United States*, 2019 WL 1430111, at *3 (E.D. Pa. Mar. 29, 2019). Petitioners contend that ongoing litigation in South Korea over whether Yoon is a resident for tax purposes somehow undermines the IRS's legitimate purpose in issuing the summonses. Dkt. 1 ¶¶33−41. Not so. "The legitimacy of [South Korea's] investigation does not rebut the IRS's prima facie showing

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

under *Powell* because the enforcement inquiry ends with a determination that the IRS acted in good faith." *Gomis Rabassa v. United States*, 2024 WL 1435103, at \*3 (11th Cir. Apr. 3, 2024).

The status of Yoon's South Korean residency does not bear on the legitimacy of the summonses under the U.S.-South Korea Tax Treaty. Article 28 requires the exchange of information "as is necessary for carrying out the provisions of [the Treaty] or for the prevention of fraud or for the administration of statutory provisions concerning taxes." 1979-2 C.B. 435, Art. 28(1), 1979 WL 6853, at \*18. Indeed, this provision applies expansively "to taxes of every kind imposed at the National Level." *Id.*, Art. 1(3), at \*2. And nothing in the treaty bars South Korea from requesting information of non-residents. *Id.* at \*1−\*20.

Petitioners imply that Yoon's residency status could bear on whether the bank records requested are "of a class that can be obtained under the laws and administrative practices of Korea." Dkt. 1 ¶¶34−35; *see* U.S.-South Korea Tax Treaty, 1979-2 C.B. 435, Art. 28(1), 1979 WL 6853, at \*18. But this implication does not constitute "specific facts and evidence" that South Korea could not obtain records of South Korean bank accounts associated with Yoon because of the dispute over his residency status. *See Liberty Fin. Servs.*, 778 F.2d at 1392. And even if it did, this Court need not delve into South Korean administrative law to determine whether the IRS issued the summonses for a legitimate purpose. *See Mazurek v. United States*, 271 F.3d 226, 232 (5th Cir. 2001) (both unnecessary and "unwise" to evaluate the propriety of a foreign tax authority's actions under foreign law in applying the *Powell* test). *Cf. Stuart*, 489 U.S. at 369 (warning of the disputes that "would inevitably arise" if U.S. courts were required to evaluate whether a foreign "tax investigation had progressed to a point analogous to a Justice Department referral"). South Korea has represented "that if the requested information were located in the Republic of Korea, the NTS would be able to obtain the information under the tax laws of the Republic of Korea." Thomas Decl. ¶11. IRS Program Manager Thomas has reviewed the South Korean request, including this representation, and determined "it is proper under the U.S.−South Korea Tax Treaty." *Id.* ¶18. This attestation is sufficient to establish the IRS's legitimate purpose in issuing the summonses. *See Vistadis*, 2019 WL 1430111, at \*3.

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)                                    9

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

Petitioners also allege that "there is a risk that the information being requested may be used for purposes other than taxation and the request is not concerning taxes in violation of the U.S.−Korea Tax Treaty." Dkt. 1 ¶39. Petitioners' speculation as to South Korea's motives does not bear on the IRS's legitimate purpose in issuing the summonses. *See Alvarez v. United States*, 2025 WL 2780786, at *3 (N.D. Cal. Sept. 30, 2025) (speculation that IRS summonses were issued to support a criminal investigation in Spain did not warrant quashing them). South Korea has represented that the requested information is relevant to determining whether Yoon has undeclared business income traceable to BRV Korea for purposes of a South Korean audit. Thomas Decl. ¶¶6−11. IRS Program Manager Thomas has determined that South Korea has a reasonable basis to believe that the records requested are relevant to this audit. *Id.* ¶16. And IRS Tax Specialist Johnson issued the summonses for the purpose of obtaining the records South Korea requested. Johnson Decl. ¶4. The IRS has also affirmed that it will adhere to the confidentiality provision of the U.S.-South Korea Tax Treaty. Thomas Decl. ¶17. None of Petitioners' allegations rebut this legitimate purpose for issuing the summonses. *See Zhang*, 2021 WL 6122922, at *4−5 (N.D. Cal. Oct. 28, 2021).

B.  *Prong Two: Petitioners Cannot Show that the Requested Records Are Not Relevant to the IRS's Legitimate Purpose.*

Petitioners' only argument that the records the summonses request are not relevant to their purpose is that their purpose is not legitimate. Dkt. 1 ¶42. Because the IRS declarations establish the summonses' legitimate purpose and that the information sought is relevant to that purpose, Petitioners cannot rebut the second *Powell* requirement.

C.  *Prong Three: Petitioners Cannot Rebut That the Information Sought Is Not in the IRS's Possession.*

Petitioners contend that "there is no indication in the Summonses that the information sought is not already in respondent's possession." Dkt. 1 ¶43. IRS Tax Specialist Shelby Johnson has now attested that the information requested by the summonses is not currently in the IRS's possession. Johnson Decl. ¶11. Petitioners have presented no specific evidence to rebut this. Thus, the third *Powell* requirement remains satisfied.

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

D. _Prong Four: Because Notice of Third-Party Contacts Is Not Required for Summonses Issued in Response to Treaty Requests, the IRS Complied with All Necessary Administrative Prerequisites._

Petitioners contend, citing § 7602(c), that the summonses are invalid because no advance notice was provided before the IRS contacted third parties regarding Yoon's tax liabilities. Dkt. 1 ¶¶44−49. Section 7602(c)(1) requires the IRS to send notice to a taxpayer 45 days in advance if it intends to contact a third party "with respect to the determination or collection of the tax liability of such taxpayer." But 26 C.F.R. § 301.7602-2(c)(3)(i)(C) (the "Regulation") defines "tax liability" as "the liability for any tax imposed by _title 26_ of the United States Code." (Emphasis added). It does not include "the liability for any tax imposed by any other jurisdiction." _Id_. Thus, § 7602's requirement of advance notice for third-party contacts does not apply to summonses issued to third parties with respect to foreign tax liabilities. _Alvarez_, 2025 WL 2780786, at *3.

Petitioners argue that § 7602(c)'s 45-day-notice requirement applies despite the Regulation for two reasons: (1) Yoon's U.S. tax liability could decrease if he is held liable for tax in South Korea and (2) the Regulation is invalid under _Loper Bright Enterprises v. Raimondo_, 603 U.S. 369 (2024). Dkt. 1 ¶48−49. Both arguments fail.

　　i.　　Even if the summonses could affect Yoon's U.S. taxes, § 7602(c)(1) advance notice does not apply.

First, the mere possibility that the information requested by the summonses could affect Yoon's U.S. tax liabilities (if South Korea uses that information to assess South Korean taxes against Yoon) does not render the summonses third-party contacts "with respect to the determination or collection" of a U.S. tax liability. 26 U.S.C. § 7602(c)(1). The IRS issued the summonses "for the purpose of obtaining the information requested by the South Korean tax authorities." Johnson Decl. ¶4. They were not issued with respect to any U.S. federal tax liability. And any effect the South Korean audit could have on Yoon's U.S. tax liability is highly speculative. Even if the NTS assessed South Korean taxes against Yoon, the availability of an offsetting U.S. tax credit would depend on the nature and timing of the taxes imposed by both

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

jurisdictions. Because the summonses were not issued with respect to any U.S. tax liability, § 7602(c)(1)'s 45-day notice does not apply. *See G2A.COM*, 789 F. App'x at 301.

### ii. The best interpretation of § 7602(c)(1) is that it does not apply to foreign tax liabilities.

Second, while *Loper Bright* prohibits courts from "defer[ing] to an agency interpretation of the law simply because a statute is ambiguous," § 7602(c) unambiguously applies only to U.S. tax liabilities. 603 U.S. at 413. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 588 U.S. 128, 141 (2019). Section 7602(a) authorizes the IRS to issue summonses "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability." Then, § 7602(c)(1) forbids the IRS from contacting "any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer" unless it provides 45-day advance notice. Reading § 7602(c) in conjunction with § 7602(a) clarifies that the "determination or collection of the tax liability of such taxpayer" in § 7602(c)(1) refers to "determining the liability of [the taxpayer] for any internal revenue tax" or "collecting any such liability" in § 7602(a). Thus, contacts with respect to an "internal revenue tax" liability are the only ones that require the 45-day advance notice. An internal revenue tax liability must be a U.S. tax liability. Indeed, the Supreme Court has interpreted "internal revenue laws" in § 7602 to encompass only the "United States revenue laws." *Stuart*, 489 U.S. at 361 (interpreting § 7602(c) of the 1982 version of the statute, which is now § 7602(d)). And so, the plain language of § 7602(c)(1) requires that the 45-day advance notice requirement apply to third-party contacts with respect to the determination or collection of only a U.S. tax liability—not a foreign tax liability.

Furthermore, the Regulation's interpretation of "tax liability" in § 7602(c)(1) as "the liability for any tax imposed by title 26 of the United States Code" is entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The Regulation is an interpretation of the IRS

"made in pursuance of official duty and based upon specialized experience" and is thus one that the Court can "properly resort for guidance" under *Skidmore*. *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139−40). Since the Regulation was finalized within a few years of the codification of § 7602(c) and has never been amended, it "may be especially useful in determining the statute's meaning." *Id.* at 394. *Compare* Pub. L. 105-206, Title III, § 3417 (July 22, 1998) (codification of § 7602(c)), *with* 26 C.F.R. § 301.7602-2(g) (December 18, 2002 is the Regulation's effective date). Because the Regulation is the best interpretation of "tax liability" and one that is entitled to respect, the Court should rely on the Regulation and hold that § 7602(c) advance notice does not apply to summonses for information with respect to a foreign tax liability.

Petitioners provide no alternate definition. Dkt. 1¶49. Nor is any other definition reasonable given the difficulties inherent in expanding the meaning of "tax liability" in § 7602(c) beyond the United States' borders. If § 7602(c)(1) required 45-day advance notice for all summonses with respect to the determination or collection of any "tax liability" in any country, the IRS and the courts would have to sort through the complexities of foreign tax administration to determine whether summonses for a treaty request required advance notice. This would be further complicated by the three exceptions to § 7602(c)(1)'s 45-day advance notice requirement: (1) contacts the taxpayer has authorized; (2) good cause to believe "notice would jeopardize collection" or "may involve reprisal"; or (3) a pending criminal investigation. 26 U.S.C. § 7602(c)(3). Requiring the IRS and the courts to engage in a protracted examination of a foreign country's investigation underlying a treaty request to determine if § 7602(c)(1) or any of its exceptions applied would contravene Congress's intent that summons enforcement proceedings be summary in nature. *Stuart*, 489 U.S. at 369. Thus, § 7602(c)(1)'s 45-day notice requirement does not apply to summonses issued with respect to foreign tax liabilities.

//

//

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

13

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

    iii.    <u>Alternatively, the Regulation is a proper exercise of the IRS's delegated authority under § 7805.</u>

Sometimes "the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Loper Bright*, 603 U.S. at 394. Like many statutes that "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme," *id.* at 395, § 7805(a) of the Internal Revenue Code delegates to the IRS the authority to "prescribe all needful rules and regulations for the enforcement of" the internal revenue laws. This is Congress's "explicit authorization" for the IRS to define words left undefined. *Mayo Found. for Med. Educ. v. United States*, 562 U.S. 44, 57 (2011); *see also McNamee v. Dep't of Treasury*, 488 F.3d 100, 105 (2d Cir. 2007) ("Congress expressly delegated authority to the [IRS] to adopt regulations to fill in gaps in the Code" under § 7805(a).). The IRS relied on § 7805 in promulgating the Regulation. *See* 26 C.F.R. § 301.7602-2. And the IRS acted appropriately within § 7805(a)'s delegation in defining "tax liability" as a Title 26 tax liability for § 7602(c)(1) notice purposes. *Cf. Lesko v. United States*, 161 F.4th 1352, 1360−64 & n.11 (Fed. Cir. 2025) (en banc) (upholding OPM regulation requiring written approval for overtime based on delegation similar to § 7805(a)). Thus, the Regulation should be upheld.

***

Because no § 7602(c)(1) advance notice was required, the IRS complied with all the requisite administrative procedures for enforcement of the summonses. The fourth *Powell* requirement remains satisfied.

**CONCLUSION**

The United States has established a prima facie case under *Powell* for the enforcement of the summonses the IRS has issued to Wells Fargo and First Citizens Bank in response to South Korea's proper treaty requests. And Petitioners cannot rebut this case. The Court should thus permit the United States to honor its covenant with South Korea and enforce the summonses.

//

//

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-305-3664

Respectfully submitted May 8, 2026.

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/Lolita De Palma*
LOLITA DE PALMA
Trial Attorney, Tax Litigation Branch
Civil Division, Department of Justice

*Counsel for the United States*

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

15

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2026, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel for all parties that have appeared in this action.

/s/ Lolita De Palma
LOLITA DE PALMA
Trial Attorney, Tax Litigation Branch
Civil Division
United States Department of Justice

US Motion to Deny Petition and Enforce Summonses
(Case No. 3:26-cv-01423)

16

**U.S. DEPARTMENT OF JUSTICE**
Tax Litigation Branch, Civil Division
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664