BAKER BOTTS L.L.P.
Jon Feldhammer, State Bar No. 255031
jon.feldhammer@bakerbotts.com
Benjamin Koodrich, State Bar No. 262521
benjamin.koodrich@bakerbotts.com
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: (415) 291-6200

Attorneys for Petitioners
KWAN YOON, GOODAM HOLDINGS
LLC, and HYUNDAM LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KWAN YOON, GOODAM HOLDINGS LLC, and HYUNDAM LLC, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No. 26-cv-01423-VC <br><br> **PETITIONERS' BRIEF IN OPPOSITION TO THE UNITED STATES' MOTION FOR SUMMARY DENIAL OF THE PETITION TO QUASH AND FOR ENFORCEMENT OF INTERNAL REVENUE SERVICE SUMMONSES** <br><br> Date: July 9, 2026 <br> Time: 10:00 a.m. |

1

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................. 6

II.   Facts ........................................................................................................................... 6

   A.   Background on Petitioners ................................................................................... 6

   B.   The Summonses Relating to the Audit of Mr. Yoon .......................................... 6

   C.   The Summonses Relating to the Audit of BRV Korea Advisors .......................... 7

   D.   The Lack of Control by BRV Korea Advisors Over Petitioners' Accounts ........... 7

   E.   The IRS's Issuance of the Summonses Without Advance Notice ........................ 8

   F.   Petitioners' Attempts to Resolve the Issues Raised in the Petition to Quash ........... 8

III.  Argument .................................................................................................................... 8

   A.   The IRS Did Not Follow the Administrative Requirements of the Internal
        Revenue Code Because the IRS Did Not Issue Advance Notice of the
        Summonses as Required by Internal Revenue Code Section 7602(c). .................... 9

        1.   Congress Enacted Internal Revenue Code Section 7602(c)'s Advance Notice
             Requirement as a Taxpayer Protection. ................................................................ 9

        2.   Treasury Regulation Section 301.7602-2(c)(3)(1)(C) Was Promulgated
             Without Any Explanation of the IRS's Reasoning. .............................................. 11

        3.   The Best Reading of Internal Revenue Code Section 7602(c) Is That It
             Applies to Summonses Issued in Response to Treaty Requests. ......................... 11

        4.   The Summonses Are Contacts "with Respect to the Determination" of a U.S.
             Tax Liability. ...................................................................................................... 14

        5.   The Regulation Is Not a Valid Exercise of Delegated Authority Under
             Internal Revenue Code Section 7805(a). .............................................................. 14

        6.   Treasury Regulation Section 301.7602-2(c)(3)(i)(C) Is Not Valid Under
             *Skidmore*. ......................................................................................................... 17

   B.   The Summonses Are Overbroad and Therefore Do Not Meet the Requirement
        of Being Relevant to a Legitimate Purpose. ......................................................... 18

        1.   The Summonses Relating to BRV Korea Advisors Incorrectly Identify
             Accounts Held in Petitioners' Names. ................................................................. 18

        2.   The Summonses Are Overbroad Because They Seek Documents That Are
             Not Relevant to the Korean Audits. .................................................................... 19

IV.   Conclusion ................................................................................................................ 20

2       PETITIONERS' OPP'N TO MOTION FOR
                                                          SUMMARY DENIAL – 3:26-cv-01423-VC

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. United States*,
No. 24-cv-08079-JD, 2025 WL 2780786 (N.D. Cal. Sept. 30, 2025) ....................................16

*Andrus v. Glover Construction Co.*,
446 U.S. 608 (1980)...............................................................................................................13

*Bondi v. VanDerStok*,
604 U.S. 458 (2025).........................................................................................................16, 17

*Bull D, S.A. de C.V. v. United States*,
487 F. Supp. 2d 772 (W.D. Tex. 2007)..................................................................................12

*David H. Tedder & Associates, Inc. v. United States*,
77 F.3d 1166 (9th Cir. 1996) .................................................................................................19

*G2A.COM Sp. z.o.o. (Ltd.) v. United States*,
789 F. App'x 296 (3d Cir. 2019) ...........................................................................................16

*J.B. v. United States*,
916 F.3d 1161 (2019)..................................................................................................10, 13, 18

*Lesko v. United States*,
161 F.4th 1352 (Fed. Cir. 2025) ............................................................................................16

*Liberty Global, Inc. v. Commissioner*,
153 F.4th 966 (10th Cir. 2025)..............................................................................................14

*Lidas, Inc. v. United States*,
238 F. 3d 1076 (9th Cir. 2001) ...........................................................................6, 9, 13, 15, 18

*Llanes Tellez v. Bondi*,
No. 25-cv-08982-PCP, 2025 WL 3677937 (N.D. Cal. Dec. 18, 2025) .................................17

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)...................................................................................................... *passim*

*Mayo Foundation for Medical Education and Research v. United States*,
562 U.S. 44 (2011)..................................................................................................................14

*McNamee v. Departmentt of the Treasury*,
488 F.3d 100 (2d Cir. 2007)............................................................................................14, 15

*Miller v. Federal Deposit Insurance Corporation*,
738 F.3d 836 (7th Cir. 2013) .................................................................................................12

*Pacific Operators Offshore, LLP v. Valladolid*,
    565 U.S. 207 (2012).................................................................................................12

*Pritchard v. Blue Cross Blue Shield of Illinois*,
    159 F.4th 646 (9th Cir. 2025) .........................................................................17, 18

*Rowan Companies, Inc. v. United States*,
    452 U.S. 247 (1981).................................................................................................15

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944).........................................................................................16, 17

*United States v. Cartwright*,
    411 U.S. 546 (1973).................................................................................................15

*United States v. Coinbase, Inc.*,
    No. 17-CV-01431-JSC, 2017 WL 5890052 (N.D. Cal. Nov. 28, 2017)..................19

*United States v. Goldman*,
    637 F.2d 664 (9th Cir. 1980) .................................................................................19

*United States v. Powell*,
    379 U.S. 48 (1964)...................................................................................................8

*United States v. Vogel Fertilizer Co.*,
    455 U.S. 16 (1982)..................................................................................................15

**Statutes**

18 U.S.C. § 926.............................................................................................................16

26 U.S.C. § 7602............................................................................................... *passim*

26 U.S.C. § 7805....................................................................................11, 14, 15, 16

43 U.S.C. § 1333...........................................................................................................12

Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No.
    105-206, 112 Stat. 685 (1998) .......................................................................9, 10, 11

Taxpayer First Act, Pub. L. No. 116-25, 133 Stat. 981 (2019).......................................10

**Other Authorities**

26 C.F.R. § 1.1563-1.....................................................................................................15

26 C.F.R. § 20.2031-8...................................................................................................15

26 C.F.R. § 31.3121(a)-1 ..............................................................................................15

26 C.F.R. § 31.3306(b)-1 ..................................................................................................15

26 C.F.R. § 301.7602-2.............................................................................................. *passim*

66 Fed. Reg. 77 (Jan. 2, 2001) ...................................................................................11, 17

67 Fed. Reg. 77,419 (Dec. 18, 2002) .........................................................................11, 17

Senate Report No. 105-174 ...........................................................................9, 10, 13, 18

## I.      INTRODUCTION

The government's argument that Internal Revenue Code section 7602(c)'s advance notice requirement does not apply to summonses issued in response to treaty requests is inconsistent with the statutory text, case law, and Congressional purpose. In *Lidas*, the Ninth Circuit concluded that "[t]he IRS [was] bound by law to employ the same procedures to obtain information requested by [a treaty partner] as it would employ in the investigation of a domestic tax liability." *Lidas, Inc. v. United States*, 238 F. 3d 1076 (9th Cir. 2001). Those procedures include advance notice to the taxpayer under section 7602(c), which protects the taxpayer's reputational interest and gives the taxpayer a meaningful opportunity to resolve issues and volunteer information before the IRS seeks information from third parties. The regulation on which the government relies, 26 C.F.R. § 301.7602-2(c)(3)(i)(C), is contrary to *Lidas* and is not a valid exercise of delegated authority. The regulation is not entitled to deference under *Loper Bright* and should be held invalid. The government's motion should be denied.

## II.      FACTS

The government's motion does not dispute the facts set forth in the petition. *See* Dkt. No. 1 ¶¶ 9–28; Dkt. No. 20 at 1–3.

### A.      Background on Petitioners

Petitioner Kwan Yoon is a United States citizen and not a Korean citizen. Dkt. No. 1 ¶ 1. Petitioner Goodam Holdings LLC ("Goodam") and Hyundam LLC ("Hyundam") are Nevada LLCs solely owned by Mr. Yoon. *Id.* ¶¶ 2–3. Mr. Yoon's principal place of abode and center of economic interest are in the United States. *Id.* ¶ 10. For the tax years 2020 through 2024, Mr. Yoon filed tax returns and paid tax as a resident of the United States. *Id.* ¶ 11.

### B.      The Summonses Relating to the Audit of Mr. Yoon

Two of the summonses at issue direct Wells Fargo and First Citizens Bank to produce documents "pertaining to all accounts that may be owned, controlled, or under the signatory authority of" Mr. Yoon in connection with an audit of Mr. Yoon by the Korean National Tax Service for the 3-year period from January 1, 2021, through December 31, 2023. *See* Dkt. No.

20-4 at 5, 11. These summonses identify a number of "[p]ossible accounts," including a total of 12 accounts identified as being held in the name of Mr. Yoon, Goodam, or Hyundam. *Id.* The declarations of IRS Program Manager Patricia Thomas and IRS Tax Law Specialist Shelby Johnson state that the IRS issued these summonses in response to a request from the Korean government and that the Korean National Tax Service is auditing whether Mr. Yoon may have "earned undeclared income from business activities," including alleged income from "management fees and investment income related to BRV Korea." Dkt. No. 20-1 ¶ 8; Dkt. No. 20-2 ¶¶ 2–3. But these summonses do not just seek documents relevant to alleged transactions with BRV Korea Advisors. Instead, these summonses seek essentially all account records for a 3-year period of time irrespective of any relevance to the issues in the Korean audit. *See* Dkt. No. 20-4 at 5, 11.

C.      **The Summonses Relating to the Audit of BRV Korea Advisors**

The other two summonses at issue direct Wells Fargo and First Citizens Bank to produce documents "pertaining to all accounts that may be owned, controlled, or under the signatory authority of" nonparty BRV Korea Advisors Co. Ltd ( "BRV Korea Advisors") in connection with an audit of BRV Korea Advisors by the Korean National Tax Service for the 5-year period from January 1, 2020, through December 31, 2024. *See* Dkt. No. 20-3 at 5, 11. Thus, the summonses relating to the audit of BRV Korea Advisors seek documents for a longer time period than the summonses relating to the audit of Mr. Yoon. *Compare* Dkt. No. 20-4 at 5, 11 *with* Dkt. No. 20-3 at 5, 11. Despite the summonses relating to the audits of different taxpayers, the summonses relating to the audit of BRV Korea Advisors identify the same "[p]ossible accounts" as the summonses relating to the audit of Mr. Yoon, including the same 12 accounts identified as being held in the name of Mr. Yoon, Goodam, or Hyundam. *See* Dkt. No. 20-3 at 5, 11; Dkt. No. 20-4 at 5, 11.

D.      **The Lack of Control by BRV Korea Advisors Over Petitioners' Accounts**

The government's motion does not dispute that BRV Korea Advisors does not own, control, or have signature authority over any account at Wells Fargo or First Citizens Bank held

in the name of any petitioner. *See* Dkt. No. 20 at 1–3. Mr. Yoon is not an officer, director, or employee of BRV Korea Advisors. Dkt. No. 1 ¶ 13. Petitioners do not hold any ownership interest in BRV Korea Advisors. *Id.* ¶ 14. BRV Korea Advisors does not have control of or access to any account at Wells Fargo or First Citizens Bank held in the name of any petitioner. *Id.* ¶¶ 23–24.

### E.   The IRS's Issuance of the Summonses Without Advance Notice

The government acknowledges that the IRS did not provide petitioners with advance notice of the summonses under Internal Revenue Code section 7602(c) or otherwise request that petitioners produce the summonsed documents. *Id.* ¶ 25; Dkt. No. 20-2 ¶ 9.

### F.   Petitioners' Attempts to Resolve the Issues Raised in the Petition to Quash

Petitioners have made repeated attempts to reach an agreement with the government to resolve the issues in the petition to quash. *See* Feldhammer Decl. ¶¶ 4-5. In particular, petitioners proposed that the parties meet and confer in an attempt to reach an agreement under which any relevant documents could be produced but with irrelevant information redacted. *Id.* ¶ 6–7. But the government ultimately would not agree to petitioners' proposal. *Id.* ¶ 8.

## III.   ARGUMENT

The government's motion should be denied because the government has not established two of the *Powell* requirements. The government has not established the requirement "that the administrative steps required by the Code have been followed" because the IRS did not provide advance notice of the summonses as required by section 7602(c). *See United States v. Powell*, 379 U.S. 48, 58 (1964). The government likewise has not established the requirement that the summonses are "relevant to the purpose" of the Korean National Tax Service's request because the summonses are overbroad and seek voluminous documents that are irrelevant to the stated purpose of the request.

A.     **The IRS Did Not Follow the Administrative Requirements of the Internal Revenue Code Because the IRS Did Not Issue Advance Notice of the Summonses as Required by Internal Revenue Code Section 7602(c).**

The government's argument that section 7602(c)'s advance notice requirement does not apply to summonses issued in response to treaty requests is without merit. Consistent with *Lidas*, the best reading of section 7602(c) is that the IRS is required to follow the same procedures for summonses in response to treaty requests as it would for summonses relating to a domestic tax liability. *See Lidas*, 238 F. 3d at 1081. And the regulation on which the government relies is not entitled to deference under *Loper Bright* and should be held invalid.

1.     **Congress Enacted Internal Revenue Code Section 7602(c)'s Advance Notice Requirement as a Taxpayer Protection.**

Section 7602(c) was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998 to protect the reputational interests of taxpayers like Mr. Yoon. *See* Pub. L. No. 105-206, § 3417, 112 Stat. 685, 757–58 (1998). Prior to the enactment of section 7602(c), the IRS was not required to provide taxpayers with advance notice before contacting third parties. *See* S. Rep. No. 105-174, at 77. As enacted in 1998, section 7602(c)(1) provided the following general rule:

> An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

112 Stat. at 757. That text does not contain language to limit the term "tax liability" to U.S. tax liabilities.

In section 7602(c)(3), Congress enumerated three exceptions to the advance notice requirement. Section 7602(c)(3) reads: "This subsection shall not apply (A) to any contact which the taxpayer has authorized; (B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person; or (C) with respect to any pending criminal investigation." There is no exception provided "for summonses issued in response to treaty requests" as argued for by the government. *See* Dkt. No. 20 at 11.

Section 7602(c) did not direct the Secretary of the Treasury to prescribe any regulations. *See* 112 Stat. at 757–58. In other words, Congress did not "delegat[e] discretionary authority" to the IRS. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024).

The Senate Report explained the reason for the change in law as follows:

> The Committee believes that taxpayers should be notified before the IRS contacts third parties regarding examination or collection activities with respect to the taxpayer. Such contacts may have a chilling effect on the taxpayer's business and could damage the taxpayer's reputation in the community. Accordingly, the Committee believes that *taxpayers should have the opportunity to resolve issues and volunteer information before the IRS contacts third parties*.

S. Rep. No. 105-174, at 77 (emphasis added). Courts have acknowledged that this was Congress's intent in enacting section 7602(c). *See J.B. v. United States*, 916 F.3d 1161, 1168 (2019) (discussing how section 7602(c) "protects the taxpayer's reputational interest" and "gives the taxpayer a meaningful opportunity to resolve issues and volunteer information before the IRS seeks information from third parties, which would be unnecessary if the relevant information is provided by the taxpayer himself").

In explaining section 7602(c), the Senate Report further states:

> The provision requires the IRS to notify the taxpayer before contacting third parties regarding examination or collection activities (including summonses) with respect to the taxpayer. Contacts with government officials relating to matters such as the location of assets or the taxpayer's current address are not restricted by this provision. *The provision does not apply to criminal tax matters, if the collection of the tax liability is in jeopardy, or if the taxpayer authorized the contact.*

S. Rep. No. 105-174, at 77 (emphasis added). While the Senate Report discusses the enumerated exceptions to the advance notice requirement under section 7602(c)(3), the Senate Report does not reference any exception for "summonses issued in response to treaty requests." *See* Dkt. No. 20 at 11.

Section 7602(c) was amended in 2019 by the Taxpayer First Act to require that the taxpayer be notified at least 45 days prior to the IRS contacting a third party. *See* Pub. L. No. 116-25, § 1206, 133 Stat. 981, 990 (2019). That version is the current version.

### 2. Treasury Regulation Section 301.7602-2(c)(3)(1)(C) Was Promulgated Without Any Explanation of the IRS's Reasoning.

In 2001, the IRS published a notice of proposed rulemaking to interpret section 7602(c). *See* 66 Fed. Reg. 77, 77 (Jan. 2, 2001). The proposed regulations contained a definition of the term "tax liability" as meaning "the liability for any tax imposed by title 26 of the United States Code (including any interest, additional amount, addition to the tax, or assessable penalty) and does not include the liability for any tax imposed by any other jurisdiction nor any liability imposed by other federal statutes." Prop. Treas. Reg. § 301.7602-2(c)(3)(i)(C), 66 Fed. Reg. at 82. The preamble to the proposed regulations does not contain any explanation of the IRS's reasoning with respect to that definition. *See* 66 Fed. Reg. at 77–81. As discussed above, Congress did not delegate discretionary authority to the IRS in section 7602(c) when it was enacted in 1998. *See* Pub. L. No. 105-206, § 3417, 112 Stat. at 757–58. Rather, the authority cited for the proposed regulations was Internal Revenue Code section 7805, which generally provides that the Secretary of the Treasury "shall prescribe all needful rules and regulations for the enforcement of this title." 26 U.S.C. § 7805(a); *see also* 66 Fed. Reg. at 81.

In 2002, the Treasury Department published final regulations. *See* 67 Fed. Reg. 77,419 (Dec. 18, 2002). The final regulations made no change to the definition of the term "tax liability" in section § 301.7602-2(c)(3)(i)(C). *See* 67 Fed. Reg. at 77,419. The preamble to the final regulations again does not contain any explanation of the IRS's reasoning with respect to that definition. *See* 67 Fed. Reg. at 77,419–21.

### 3. The Best Reading of Internal Revenue Code Section 7602(c) Is That It Applies to Summonses Issued in Response to Treaty Requests.

The statutory text, case law, and Congressional purpose all support interpreting section 7602(c) as applying to summonses issued in response to treaty requests.

*First*, the text of section 7602(c) does not contain any exception for summonses issued in response to treaty requests.

Section 7602(c)(1) provides that the IRS "[a]n officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the

11    PETITIONERS' OPP'N TO MOTION FOR SUMMARY DENIAL – 3:26-cv-01423-VC

determination or collection of the tax liability of such taxpayer unless" the IRS has issued notice to the taxpayer 45 days in advance of contacting the third party. Section 7602(c) applies in this case because an "employee of the Internal Revenue Service" (Ms. Johnson, *see* Dkt. No. 20-2 ¶ 1) contacted a "person other than the taxpayer" (Wells Fargo and First Citizens Bank, *see id.* ¶ 4) with respect to "the determination or collection of the tax liability of such taxpayer" (Mr. Yoon). The text of section 7602(c) does not include language that would limit its applicability to a "U.S. federal tax liability" as argued for by the government. *See* Dkt. No. 20 at 11; *see also Bull D, S.A. de C.V. v. United States*, 487 F. Supp. 2d 772, 777 (W.D. Tex. 2007) (concluding that section 7602(c) was applicable to a summons that the IRS issued in response to a request by the Mexican government and rejecting the government's argument that section 7602(c) was not applicable because the case did "not concern a domestic matter"). Thus, the text of section 7602(c) supports the conclusion that the IRS was required to provide advance notice to petitioners.

The government's argument that the language "internal revenue tax" in section 7602(a) should be applied to the advance notice requirement in section 7602(c) is without merit. *See* Dkt. 20 at 12. Courts have recognized that "the inclusion of limiting language in one subsection but not another subsection usually yields the inference that the limitation does not apply to the latter subsection." *See Miller v. F.D.I.C.*, 738 F.3d 836, 842–43 (7th Cir. 2013) (citing *Pac. Operators Offshore, LLP v. Valladolid*, 565 U.S. 207 (2012)). In *Pacific Operators Offshore*, the Court rejected the petitioners' argument that limitations contained in neighboring subsections supported an inference that Congress intended that such a limitation apply to the subsection at issue. *See Pacific Operators Offshore*, 565 U.S. at 215–17 (rejecting petitioners' argument that "because all [43 U.S.C.] § 1333(b)'s neighboring subsections contain specific situs limitations, we should infer that Congress intended to include a situs-of-injury requirement in § 1333(b)"). Thus, the inclusion of the limiting language "for any internal revenue tax" in section 7602(a) but not section 7602(c) supports the inference that the limiting language does not apply to section 7602(c). *See Miller*, 738 F.3d at 842–43.

The interpretation of section 7602(c) as applying to summonses issued n response to treaty requests is also supported by the rule that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980). In section 7602(c)(3), Congress explicitly enumerated exceptions to the general prohibition against the IRS contacting third parties without advance notice. There is no evidence that Congress intended an additional exception for summonses issued in response to treaty requests. *See* S. Rep. No. 105-174, at 77.

*Second*, case law supports interpreting section 7602(c) as applying to summonses issued in response to treaty requests.

The Ninth Circuit has ruled that section 7602(c) should be construed "broadly." *See J.B. v. United States*, 916 F.3d 1161, 1168 (9th Cir. 2019) ("As an exception to the general rule that taxpayer records are to be kept confidential, we construe § 7602(a) narrowly in favor of the taxpayer and § 7602(c) broadly as a protective measure.").

The government's argument that section 7602(c)'s advance notice requirement does not apply to summonses issued in response to treaty requests is inconsistent with the Ninth Circuit's decision in *Lidas*. The *Lidas* court concluded that "[t]he IRS [was] bound by law to employ the *same procedures* to obtain information requested by France . . . as it would employ in the investigation of a *domestic tax liability*." *Lidas*, 238 F. 3d at 1081 (emphasis added). Those procedures include the advance notice required under section 7602(c).

*Third*, the Congressional purpose of 7602(c) supports its application to summonses issued in response to treaty requests.

The legislative history shows the Congress intended that section 7602(c) would protect a taxpayer's "reputational interest" by providing the taxpayer "the opportunity to resolve issues and volunteer information before the IRS contacts third parties." *See J.B.*, 916 F.3d at 1168; S. Rep. No. 105-174, at 77. That Congressional purpose applies equally to summonses relating to foreign tax liabilities as it does to summonses relating to U.S. tax liabilities.

### 4.   The Summonses Are Contacts "with Respect to the Determination" of a U.S. Tax Liability.

Contrary to the government's argument, it would not be "highly speculative" that any determination that Mr. Yoon owes Korean taxes would have an effect on his U.S. tax liability. *See* Dkt. No. 20 at 11. Given the availability of the foreign tax credit, such an effect would be expected. *See Liberty Glob., Inc. v. Comm'r*, 153 F.4th 966, 967 (10th Cir. 2025) ("To avoid double taxation, the Tax Code credits the taxpayer for taxes paid on overseas income."). It follows that the contacts the IRS made by serving the summonses on Wells Fargo and First Citizens Bank were "contacts with respect to an 'internal revenue tax' liability" under section 7602(c)(1). There is no reason to believe Congress enacted these protections for a U.S. person against the U.S. government but then did not provide them against a foreign government the U.S. government is acting on behalf of.

### 5.   The Regulation Is Not a Valid Exercise of Delegated Authority Under Internal Revenue Code Section 7805(a).

The government's argument based on Internal Revenue Code section 7805(a) is without merit. *See* Dkt. No. 20 at 14. Section 7805(a) does not expressly delegate authority to define the term "tax liability" in section 7602(c). Section 7805(a) does not reference section 7602(c) at all. Rather, section 7805(a) provides that the Secretary of the Treasury "shall prescribe all needful rules and regulations for the enforcement of this title." 26 U.S.C. § 7805(a). Contrary to the government's argument, section 7805(a) does not provide "'explicit authorization' for the IRS to define words left undefined." *See* Dkt. No. 20 at 14 (quoting *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 57 (2011)). Rather, *Mayo* only recognized that section 7805(a) provides "explicit authorization to prescribe needful rules and regulations." *Mayo*, 562 U.S. at 57. In any event, section 7805(a) does not authorize the Treasury to define terms inconsistent with Congressional intent, and *Loper Bright* overruled *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

A pre-*Loper Bright* case cited by the government, *McNamee v. Dep't of the Treasury*, 488 F.3d 100 (2d Cir. 2007), likewise does not support the government's position. The

government quotes *McNamee* for the proposition that, in enacting section 7805(a), "Congress expressly delegated authority to the Secretary of the Treasury to adopt regulations to fill in gaps in the Code." Dkt. No. 20 at 14 (quoting *McNamee*, 488 F.3d at 105). But the IRS did not "fill in a gap" in promulgating section 301.7602-2(c)(3)(i)(C). Rather, in promulgating section 301.7602-2(c)(3)(i)(C), the IRS attempted to limit a taxpayer protection by adding a limitation that is inconsistent with the statutory text and Congressional purpose of protecting the taxpayer's reputational interest and giving the taxpayer a meaningful opportunity to resolve issues and volunteer information before the IRS seeks information from third parties. *See supra* at 11–13.

Even before *Loper Bright*, regulations promulgated under section 7805(a) were held invalid where they exceeded the Treasury's authority to prescribe "needful rules and regulations for the enforcement of this title." 26 U.S.C. § 7805(a); *see also United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 19 (1982) (holding that 26 C.F.R. § 1.1563-1(a)(3) was invalid because the definition of "brother-sister controlled group" was not "a reasonable implementation of the statute"); *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 263 (1981) ("We conclude that Treas. Reg. §§ 31.3121(a)-1(f) and 31.3306(b)-1(f) fail to implement the statutory definition of 'wages' in a consistent or reasonable manner."); *United States v. Cartwright*, 411 U.S. 546, 550 (1973) (holding that 26 C.F.R. § 20.2031-8(b) was invalid because the method for valuing mutual fund shares prescribed in the regulation was "unrealistic and unreasonable").

But after *Loper Bright,* "courts . . . may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 413. Rather, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 413. If a statute is ambiguous, *Loper Bright* directs courts "to determine the best reading of the statute and resolve the ambiguity." *Id.* at 400. The Court explained that "[i]n the business of statutory interpretation, if it is not the best, it is not permissible." *Id.* As set forth above, the best interpretation of section 7602(c) is that it applies to both domestic and foreign tax liabilities. *See Lidas*, 238 F. 3d at 1081.

In *Bondi v. VanDerStok*, 604 U.S. 458 (2025), the Court applied *Skidmore* in reviewing a rule promulgated under an authorization similar to section 7805(a). *See id.* 464, 481 (applying *Skidmore* in reviewing the authorization in 18 U.S.C. § 926(a) to prescribe "rules and regulations as are necessary to carry out the provisions of this chapter"); *see also Loper Bright*, 603 U.S. at 394 (discussing *Skidmore*). Under *VanDerStok*, regulations under section 7805(a) should likewise be analyzed under *Skidmore*. As discussed below, section 301.7602-2(c)(3)(i)(C) is not entitled to any deference under *Skidmore*.

Another pre-*Loper Bright* case cited by the government, *G2A.COM Sp. z.o.o. (Ltd.) v. United States*, 789 F. App'x 296 (3d Cir. 2019), does not support the government's position because it applied *Chevron* deference in analyzing Treasury Regulation section 301.7602-2(c)(3)(i)(C). *See* Dkt. No. 20 at 5, 12; *G2A.COM*, 789 F. App'x at 301 (following pre-*Loper Bright* case holding that "[i]f a regulation reasonably interprets and implements an ambiguous statutory provision, it must be given judicial deference"). But *Chevron* deference was overruled in *Loper Bright*, which held that courts must "determine the best reading of the statute." *Loper Bright*, 603 U.S. at 400.

While the government cites *Alvarez v. United States*, No. 24-cv-08079-JD, 2025 WL 2780786, at *3 (N.D. Cal. Sept. 30, 2025) for the proposition that section 7602(c) "does not apply to summonses issued to third parties with respect to foreign tax liabilities," *see* Dkt. No. 20 at 11, *Alvarez* did not analyze Treasury Regulation section 301.7602-2(c)(3)(i)(C) under *Loper Bright*. Rather, the order in *Alvarez* suggests that the petitioners "abandoned" their argument on that issue, and the order cites the regulation without further analysis. *See Alvarez*, 2025 WL 2780786, at *3. It follows that *Alvarez* did not consider whether the regulation is the "best reading" of section 7602(c) under *Loper Bright*.

Similarly, the last case cited by the government, *Lesko v. United States*, 161 F.4th 1352 (Fed. Cir. 2025), does not support the government's position because the court concluded that the agency interpretation in question was not entitled to any deference. *See* Dkt. No. 20 at 14; *Lesko*, 141 F.4th at 1359 ("[N]or do we give any deference to the agency interpretation of the

language of the statute."). Likewise, the IRS's interpretation of "tax liability" in section 301.7602-2(c)(3)(i)(C) should not be given any deference.

In summary, under *Loper Bright* and *VanDerStok*, the validity of section 301.7602-2(c)(3)(i)(C) should be reviewed under *Skidmore*. As set forth below, section 301.7602-2(c)(3)(i)(C) is invalid under *Skidmore*.

**6.      Treasury Regulation Section 301.7602-2(c)(3)(i)(C) Is Not Valid Under *Skidmore*.**

None of the factors to be considered under *Skidmore* support the Treasury's interpretation of section 7602(c) in the regulation. Under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), courts may consider whether "an agency interpretation may have 'power to persuade' 'depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and' other factors." *Pritchard v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 659 (9th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 388) (alteration in original). *Loper Bright* emphasized that "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright*, 603 U.S. at 400–01. It follows that the IRS's interpretation of section 7602(c) is "owed deference only to the extent that 'the validity of its reasoning' and 'its consistency with earlier and later pronouncements' give it 'power to persuade.'" *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *7 (N.D. Cal. Dec. 18, 2025) (quoting *Skidmore*, 323 U.S. at 140). None of those factors support the IRS's interpretation of section 7602(c) in the regulation.

*First*, as *Loper Bright* emphasized, the IRS as an agency has "no special competence in resolving statutory ambiguities." *Loper Bright*, 603 U.S. at 400–01. Thus, the government's argument based on the regulation having been "finalized a few years of the codification of § 7602(c)" is without merit. *See* Dkt. No. 20 at 13.

*Second*, the government does not cite any evidence of the IRS's reasoning, *see* Dkt. No. 20 at 12–13, and the preambles to the proposed and final regulations do not contain any explanation of the IRS's reasoning. *See* 66 Fed. Reg. 77, 77–81 (Jan. 2, 2001); 67 Fed. Reg.

77,419, 77,419–21 (Dec. 18, 2002). Thus, there is no evidence of "the validity of [the IRS's] reasoning." *Pritchard*, 159 F.4th at 659.

*Third*, the government's argument based on the regulation having "never been amended," Dkt. No. 20 at 13, is without merit because the regulation is inconsistent with the Ninth Circuit's decision in *Lidas* concluding that the IRS is "bound by law to employ the same procedures to obtain information requested by [a treaty partner] as it would employ in the investigation of a domestic tax liability." *Lidas*, 238 F. 3d at 1081. Thus, the regulation does not have "consistency with earlier and later pronouncements." *Pritchard*, 159 F.4th at 659.

*Fourth*, there are no other factors that would indicate that the regulation has the "power to persuade." *Id.* To the contrary, the regulation is inconsistent with the Congressional purpose in enacting section 7602(c) of protecting a taxpayer's "reputational interest" by providing the taxpayer "the opportunity to resolve issues and volunteer information before the IRS contacts third parties." *See J.B.*, 916 F.3d at 1168; S. Rep. No. 105-174, at 77.

Because the regulation is not the "best reading" of section 7602(c) and because it is not entitled to deference under *Loper Bright*, the regulation should be held invalid.

**B.      The Summonses Are Overbroad and Therefore Do Not Meet the Requirement of Being Relevant to a Legitimate Purpose.**

The summonses are overbroad in two respects: they incorrectly identify accounts held by petitioners in the summonses relating to BRV Korea Advisors, and they seek documents that are not relevant to the Korean audits.

**1.      The Summonses Relating to BRV Korea Advisors Incorrectly Identify Accounts Held in Petitioners' Names.**

The government's motion does not provide any support for the assertion in the summonses relating to BRV Korea Advisors that accounts held in *petitioners' names* are "possible accounts" that are "owned, controlled, or under the signatory authority of" *BRV Korea Advisors*. *See* Dkt. No. 20-3 at 5, 11.

BRV Korea Advisors does not have control of or access to any account at Wells Fargo or First Citizens Bank held in the name of any petitioner. Dkt. No. 1 ¶¶ 23–24. The government's

motion does not dispute that BRV Korea Advisors does not own, control, or have signature authority over any account at Wells Fargo or First Citizens Bank held in the name of any petitioner. *See* Dkt. No. 20 at 1–3.

Because none of the accounts held in petitioners' names are "owned, controlled, or under the signature authority of" BRV Korea Advisors, this provides another ground for quashing the summonses relating to BRV Korea Advisors to the extent that they seek documents pertaining to accounts held in the names of petitioners.

### 2. The Summonses Are Overbroad Because They Seek Documents That Are Not Relevant to the Korean Audits.

While the summonses should be quashed in their entirety because the IRS did not provide advance notice under section 7602(c), the summonses are also overbroad because they seek documents that are not relevant to the Korean audits. "Once a summons is challenged by a respondent, it must be 'scrutinized by the court' to determine whether it seeks information relevant to a legitimate investigative purpose, and the court may choose either to refuse enforcement or narrow the scope of the summons." *United States v. Coinbase, Inc.*, No. 17-CV-01431-JSC, 2017 WL 5890052, at *4 (N.D. Cal. Nov. 28, 2017) (quoting *United States v. Goldman*, 637 F.2d 664, 668 (9th Cir. 1980)). While the Korean audit of Mr. Yoon concerns his "income from business activities," including alleged income from "management fees and investment income related to BRV Korea," Dkt. No. 20-1 ¶ 8, the summonses seek essentially all account records irrespective of any relevance to the issues in the Korean audit. To the extent that the summonses are not quashed in their entirety, any documents that are produced should have irrelevant information redacted. *See David H. Tedder & Assocs., Inc. v. United States*, 77 F.3d 1166, 1170 (9th Cir. 1996) (affirming order of district court granting in part petition to quash where taxpayer produced documents with irrelevant information redacted).

## IV.    CONCLUSION

For the foregoing reasons, the government's motion should be denied.

Dated: June 10, 2026                                     BAKER BOTTS L.L.P.

Jon Feldhammer
Benjamin Koodrich

Attorneys for Petitioners
KWAN YOON, GOODAM HOLDINGS
LLC, and HYUNDAM LLC

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that I obtained concurrence in the filing of this document from the signatory indicated by the electronic signature.

Dated: June 10, 2026                              BAKER BOTTS L.L.P.


                                                  */s/ Benjamin Koodrich*
                                                  Benjamin Koodrich

                                                  Attorneys for Petitioners
                                                  KWAN YOON, GOODAM HOLDINGS
                                                  LLC, and HYUNDAM LLC