UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KWAN YOON, et al.,

Petitioners,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. 26-cv-01423-VC

**ORDER GRANTING MOTION TO ENFORCE IRS SUMMONSES AND FOR SUMMARY DENIAL OF THE PETITION TO QUASH**

Re: Dkt. No. 20

The government seeks enforcement of four IRS administrative summonses for information about bank accounts held by Kwan Yoon, a target of an investigation by the South Korean National Tax Service. Yoon argues that the summonses should be quashed. But he fails to carry his heavy burden. His argument that the summonses are not relevant to a legitimate purpose fails because the IRS properly relied on South Korea's representations about the relevance of the information sought. And although his argument that the IRS failed to give him proper notice of the summonses presents a closer question, it ultimately fails because the best reading of the applicable statute is that the advance notice requirement does not apply to summonses issued with respect to foreign tax liabilities. Therefore, the petition to quash is denied and the summonses may be enforced.

**I**

Kwan Yoon owns two American companies: Goodam Holdings LLC and Hyundam LLC. The South Korean National Tax Service (NTS) has been investigating Yoon and a Korean company, BRV Korea Advisors Co. Ltd., for tax years 2021–2023 and 2020–2024, respectively. The NTS suspects that Yoon is concealing income received from BRV and that both he and BRV

are liable for South Korean tax on this income. Yoon denies any employment or ownership relationship between BRV and either himself or his American companies.

To aid in its investigation, the NTS requested from the IRS information regarding American bank accounts held in the names of Yoon, his two companies, and BRV. The NTS asserts that despite the different names on the accounts, BRV and/or Yoon are the ultimate beneficial owners of all of them, and the accounts are thus relevant to its investigation of the South Korean tax liabilities of these entities. The NTS made this request under the U.S.-South Korea Tax Treaty, which provides for the exchange of certain tax-related information between the two countries.[1]

After determining that the NTS's request was proper under the treaty, the IRS issued the administrative summonses to Wells Fargo and First Citizens Bank. These summonses directed the banks to provide transactional history and ownership information for the accounts identified by the NTS for the years under its investigation. There were four summonses in total: for each of the two banks, one identifying Yoon as the taxpayer who owned, controlled, or had signatory authority over the listed accounts, and one identifying BRV. Consistent with the NTS's suspicions that BRV may control Yoon's accounts and vice versa, the two requests to each bank listed the same accounts—i.e., the Wells Fargo request regarding Yoon listed the same accounts as the Wells Fargo request regarding BRV, and same for the First Citizens Bank requests.[2] On

[1] Specifically, Article 28 of this treaty sets up a "system of administrative cooperation" by requiring an exchange of tax-related information where that information is "of a class that can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes." *Tax Treaties with the United Kingdom, The Republic of Korea, and The Republic of the Philippines: Hearings Before the S. Comm. on Foreign Relations*, 95th Cong. 397 (1977); *see* Convention between the United States of America and the Republic of Korea for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment, U.S.-S. Kor., Art. 28, June 4, 1976, T.I.A.S. No. 9506. The United States has tax treaties with many countries, and these frequently provide for exchanges of information. *See United States v. Stuart*, 489 U.S. 353, 363–64 (1989); United States Model Income Tax Convention, Art. 26 (Treasury Dep't 2016).

[2] The Wells Fargo summonses list five possible accounts, all of which are held in the name of Yoon or one of his American companies. The First Citizens Bank summonses list ten possible accounts, seven of which are held in the name of Yoon and three of which are held in the name of BRV. Yoon only seeks to quash the summonses with respect to the accounts held in his name or the name of one of his companies.

the same day the IRS served the summonses on the banks, it sent notices to Yoon, his companies, and BRV.

Upon receiving that notice, Yoon and his companies petitioned this Court to quash the four summonses pursuant to 26 U.S.C. § 7609(b)(2). The government subsequently moved to deny the petition to quash and enforce the IRS summonses.

**II**

The IRS has statutory authority to issue administrative summonses to examine any records that might be relevant to determining a person's tax liability. 26 U.S.C. § 7602(a). When a tax treaty contains an information-sharing provision, the IRS must use its section 7602 summons power to obtain information relating to a foreign tax liability at the proper request of the treaty partner. *Lidas, Inc. v. United States*, 238 F.3d. 1076, 1081 (9th Cir. 2001).

To obtain enforcement of an IRS administrative summons, including one issued pursuant to a tax treaty, the IRS must demonstrate "good faith" based on the four-part test from *United States v. Powell*: "The IRS must show that: (1) the investigation will be conducted for a legitimate purpose; (2) the inquiry will be relevant to such purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed." *Id.* at 1081–82 (citing *United States v. Powell*, 379 U.S. 48, 57–58 (1964)). Declarations or affidavits by IRS agents generally satisfy the *Powell* requirements. Once the IRS makes this showing, "the taxpayer bears a 'heavy burden' to rebut the presumption of good faith." *Id.* at 1082 (quoting *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc)). And when the IRS issues a summons at the request of a treaty partner, it's only the IRS's own good faith that matters, not that of the requesting nation. *Id.*; *United States v. Stuart*, 489 U.S. 353, 370 (1989).

**III**

The government submitted declarations from two IRS agents stating that the NTS's request was proper under the treaty and that the *Powell* requirements were all satisfied. *See* Thomas Decl. ¶¶ 4–18; Johnson Decl. ¶¶ 4, 10–15. These agent declarations satisfy the prima

facie requirements of good faith under *Powell*. *Stuart*, 489 U.S. at 360–61; *Lidas*, 248 F.3d at 1082. Thus, Yoon has the "heavy burden" of rebutting the presumption of good faith by demonstrating failure to meet the *Powell* requirements. *Lidas*, 248 F.3d at 1082 (quoting *Jose*, 131 F.3d at 1328). Over the course of briefing this case, Yoon zeroed in on two of the *Powell* requirements: relevance to a legitimate purpose (*Powell* step #2) and compliance with administrative requirements (*Powell* step #4). *See* Pet. Opp. (Dkt. No. 23) at 8.

**A**

Yoon first challenges the summonses as lacking relevance to the investigation's legitimate purpose (*Powell* step #2). The relevance standard asks whether the information sought "might have thrown light on the correctness of the taxpayer's return." *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir. 1980); *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). When assessing relevance in the context of a summons issued pursuant to a treaty request, it's the good faith of the IRS that matters, not the good faith of the requesting nation. *Stuart*, 489 U.S. at 370; *Lidas*, 248 F.3d at 1082. Accordingly, an agent's declaration that information requested by a treaty partner "might be relevant" to computing foreign tax liability satisfies the second *Powell* requirement, and a taxpayer can't rebut the IRS's showing of good faith by arguing that some aspect of the treaty partner's investigation is improper. *Stuart*, 489 U.S. at 360; *Hanse v. United States*, 2018 WL 1156201, at *4–5 (N.D. Ill. Mar. 5, 2018).

It's possible to imagine some extreme case where a foreign nation's request is so ridiculous or off-point that the IRS can't in good faith believe that the information sought is potentially relevant. But that's not what happened here. Yoon argues that (1) the summonses relating to BRV seek information on accounts held in Yoon's name, which he says can't be relevant to the BRV investigation since the entities are not related, and (2) the summonses seek essentially all account records, not limited to Yoon's alleged income from business activities with BRV. Pet. Opp. 18–19. But South Korea's request said that all that information was relevant, and it only sought records from the years that match its investigation. *See* Thomas Decl. ¶¶ 7, 14–16. This request seems sensible on its face. The NTS suspects that Yoon is concealing

income from BRV, so it makes sense that it's questioning who really owns each account and whether any transactions might reflect the concealed income. The IRS's good faith is thus easily demonstrated by the NTS's request—and the agency need not closely question the good faith of its treaty partner. *Lidas*, 248 F.3d at 1082. In *Stuart*, the Supreme Court refused to attribute to Congress an intent to require the IRS to analyze foreign tax investigations to determine if they had progressed to a point analogous to a DOJ referral. 489 U.S. at 363–65. It would be similarly unwieldy to require the agency to analyze the scope of a foreign tax investigation to determine precisely what information is relevant to it.[3]

**B**

Yoon also argues that the IRS did not follow administrative requirements of the Internal Revenue Code (*Powell* step #4) because it failed to issue advance notice of the summonses. Pet. Opp. at 9. The Code requires the IRS to notify taxpayers at least 45 days in advance of any third-party contacts that it makes "with respect to the determination or collection of the tax liability of [the] taxpayer." 26 U.S.C. § 7602(c). The government doesn't dispute that there was no 45-day notice here. Instead, it argues that that this requirement does not apply to third-party contacts respecting foreign tax liabilities. Gov't Mot. (Dkt. No. 20) at 15–18. Particularly given the apparent legislative purpose behind the notice requirement, Yoon has a stronger case here than he did for *Powell* step #2. But ultimately, the government has the better statutory interpretation argument.[4]

---

[3] Yoon's motion to quash also argued that the investigation lacked a legitimate purpose (*Powell* step #1), but in his opposition to the IRS's motion to enforce he focused only on the relevance prong (*Powell* step #2). However, in a motion for supplemental briefing filed after the hearing in this case, Yoon suggested that a South Korean court's decision on the tax liability of BRV robbed the summonses of a legitimate purpose. For the same reasons discussed in this section, as well as those in this Court's order denying the supplemental briefing motion, *see* Dkt. No. 32, any arguments about legitimate purpose are without merit.

[4] Courts sometimes excuse harmless technical errors made by the IRS that don't prejudice the taxpayer. *See United States v. Richey*, 632 F.3d 559, 564–65 (9th Cir. 2011). But the section 7602(c) reasonable notice requirement doesn't appear to fall into this category. This provision reflects Congress's intent to "protect[] the taxpayer's reputational interest" and to give taxpayers a "a meaningful opportunity to resolve issues and volunteer information before the IRS seeks information from third parties." *J.B. v. United States.*, 916 F.3d 1161, 1168 (9th Cir. 2019). Accordingly, where the IRS fails to provide the required notice, it's appropriate to quash the

The interpretation of this statute must start with the text. *Lackey v. Stinnie*, 604 U.S. 192, 199 (2025). The advance notice provision reads:

> An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer *with respect to the determination or collection of the tax liability of such taxpayer* unless . . . [notice] is provided to the taxpayer not later than 45 days before the beginning of [the period in which the contact occurs].

26 U.S.C. § 7602(c) (emphasis added). It's not immediately apparent if "the tax liability" is limited to domestic tax liability or would also include foreign tax liability. But this phrase cannot be read in a vacuum. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 320 (2014); *Leon-Briviesca v. Blanche*, 179 F.4th 1180, 1194 (9th Cir. 2026); *Idaho Conservation League v. Bonneville Power Administration*, 142 F.4th 636, 642 (9th Cir. 2025). A look at the immediate context makes clear that section 7602(c) is limited to domestic tax liabilities. Section 7602 is, from the start, a provision about the IRS's summons authority "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person *for any internal revenue tax* . . . or collecting any such liability." 26 U.S.C. § 7602(a) (emphasis added). It would not make sense for section 7602(c) to impose a limitation that applies to investigations of liability beyond those referenced in section 7602(a). Instead, section 7602(c)'s reference to the "determination or collection of the tax liability of such taxpayer" works as a shorthand for the longer and clunkier language in section 7602(a) referring to internal revenue tax liability. This understanding is consistent with the Supreme Court's recognition that the procedural requirements of section 7602 do not all apply when the IRS issues a summons at the request of a treaty partner. *See Stuart*, 489 U.S. at 361–65 (interpreting the provision that is now section 7602(d), which disallows IRS summonses where a Justice Department referral for criminal prosecution is in effect, as only applying to domestic tax investigations).

Admittedly, this interpretation is in significant tension with the apparent legislative

---

summonses. *Id.* at 1166, 1175.

purpose of section 7602(c). The advance notice provision reflects Congress's intent to protect taxpayers' reputational interests by allowing them to volunteer information before the IRS contacts a third party. *J.B. v. United States*, 916 F.3d 1161, 1168 (9th Cir. 2019). Congress even beefed up these protections in 2019 by amending the statute to require 45 days of notice rather than just "reasonable notice in advance." *See* H.R. Rep. No. 116-39, pt. 1, at 44–45 (2019). The stated rationale for this amendment—to give the taxpayer an opportunity to work things out with the government before the initiation of third-party contacts that "may have a chilling effect on the taxpayer's business and could damage the taxpayer's reputation in the community"—seems just as relevant when the IRS is investigating a taxpayer's foreign tax liability as when it is investigating a domestic tax liability. *Id.* But ultimately, legislative history arguments "are only on the menu after finding ambiguity based on the 'language itself, the specific context in which the language is used, and the broader context of the statute as a whole.'" *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1163 (9th Cir. 2023) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). As discussed, there is no ambiguity here.

For what it's worth, another consideration works against Yoon here: the IRS's own long-standing interpretation that section 7602(c) does not apply to foreign tax liabilities. 66 Fed. Reg. 77 (Jan. 2, 2001) (codified at 26 C.F.R. § 301.7602-2(c)(3)(C)). After considering the ordinary meaning of statutory language, a court may look to the interpretation of the agency responsible for implementing the statute. *Leon-Vriviesca*, 179 F.4th at 1191. Such agency interpretations receive "'due respect,' but not binding deference." *Lopez v. Garland*, 116 F.4th 1032, 1039 (9th Cir. 2024) (quoting *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 403 (2024)). The IRS's regulation was issued in 2001, just a few years after the codification of section 7602(c) in 1998, and has remained consistent since then. Therefore, even if the statutory text were ambiguous, the IRS's interpretation would be "especially useful in determining the statute's meaning"—and that might cut against Yoon's legislative purpose argument. *Loper Bright*, 603 U.S. at 394 (citing

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).[5]

**IV**

The result of this ruling—that a person gets at least somewhat fewer procedural protections when a foreign government is investigating their tax liability versus when the U.S. government is—is somewhat unsettling. But it follows from the plain reading of the statute, aided by the IRS's longstanding interpretation. Congress really ought to consider tweaking the language of the statute to confer this protection when summonses are issued to aid foreign investigations.

The petition to quash is denied. The IRS may enforce the summonses.

**IT IS SO ORDERED.**

Dated: September 17, 2026

VINCE CHHABRIA
United States District Judge

[5] The government makes an alternative argument that the general grant of rulemaking authority to the IRS in 26 U.S.C. § 7805(a) empowers the agency to "fill up details" in the statutory scheme; i.e., that section 7805(a) explicitly authorizes the agency to define the phrase "tax liability" in section 7602(c). But the best reading of the statutory text, informed by due respect to the IRS's regulation, is that section 7602(c) does not apply to foreign tax liabilities. It is therefore not necessary to consider whether section 7805(a) can bear the weight that the government says it does.